1   Jackie Redin Klein (SBN: 156028)
    jklein@lockelord.com
2   Nina Huerta (SBN: 229070)
    nhuerta@lockelord.com
3   LOCKE LORD BISSELL & LIDDELL LLP
    300 South Grand Avenue, Eighth Floor
4   Los Angeles, CA  90071-3119
    Tel:   213.485.1500
5   Fax:   213.485.1200

6
    Jennifer A. Kenedy (*pro hac vice application pending*)
7   jkenedy@lockelord.com
    LOCKE LORD BISSELL & LIDDELL LLP
8   111 S. Wacker Drive
    Chicago, Illinois  60606-4410
9   Tel:   312.443.0700
    Fax:   312.443.0336
10

11  Attorneys for Plaintiff
    FIDELITY BROKERAGE SERVICES LLC
12

13              UNITED STATES DISTRICT COURT

14      CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

15                          CV08-03863 ABC PJWx

16  FIDELITY BROKERAGE SERVICES        )   CASE NO.
    LLC,                               )
17                                     )   **COMPLAINT FOR:**
                Plaintiff,             )
18                                     )   1.   **MISAPPROPRIATION OF**
          vs.                          )        **TRADE SECRETS UNDER**
19                                     )        **CAL. CIV. CODE. §§ 3426** *et*
    DOUGLAS SANCHEZ,                   )        *seq.*; **and**
20                                     )   2.   **BREACH OF CONTRACT**
                Defendant.             )   3.   **UNFAIR COMPETITION**
21                                     )        **UNDER CAL. BUS. & PROF.**
                                       )        **CODE §§17200** *et seq.*
22

23

24        Fidelity Brokerage Services LLC ("Fidelity"), by its undersigned attorneys,

25  hereby submits the following Complaint (the "Complaint") for injunctive relief

26  against Defendant Douglas Sanchez ("Sanchez") for misappropriation of trade secrets,

27  breach of contract and unfair competition in support thereof states as follows:

28  ///

                                    1
                              **COMPLAINT**

CONFORM COPY

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

FILED
2008 JUN 12  PM 2: 27
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY _____

## NATURE OF THE CASE

Sanchez has unlawfully misappropriated Fidelity trade secret information regarding as many as 682 Fidelity accounts, representing over $213 million in assets under Fidelity management.  Sanchez gave two weeks notice of his resignation from his position as a Financial Planning Consultant with Fidelity on May 30, 2008, and almost immediately began using Fidelity's trade secret customer data on behalf of himself and his new employer Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), even while he remained on Fidelity's payroll.  In spite of notices from Fidelity to Sanchez reminding him of his obligation not to use Fidelity's trade secret information, Sanchez continues to use Fidelity's trade secret customer data to target and solicit Fidelity customers to switch their business to Merrill Lynch.  In the short time since Sanchez's resignation, at least one customer who was serviced by Sanchez at Fidelity has transferred his account to Merrill Lynch.  Sanchez's practices violate California laws prohibiting trade secret misappropriation and unfair competition, as well as the express terms of the Employee Agreement Sanchez signed during his employment with Fidelity.  Fidelity faces irreparable harm from Sanchez's use of Fidelity's trade secret information to solicit Fidelity customers to divert their business from Fidelity to Sanchez at Merrill Lynch, and Fidelity is entitled to an injunction to prevent further misappropriation and further violations of Sanchez's Employee Agreement.

## PARTIES

1.      Fidelity is a corporation organized under the laws of the state of Delaware with its principal place of business in Boston, Massachusetts.

2.      Sanchez is a former Financial Planning Consultant in Fidelity's Brea, California office.  Sanchez is a citizen of the state of California and, on information and belief, resides in Orange County, California.  Sanchez is currently employed at Merrill Lynch's Brea, California office.

///

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are diverse and the potential loss to Fidelity exceeds $75,000, exclusive of interest and costs.  Sanchez's conduct threatens at least 682 Fidelity accounts, representing over $213 million in assets under Fidelity management.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because the defendant resides in this District and a substantial part of the events giving rise to Fidelity's claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

**Fidelity's Unique Customer Development Practices.**

5.      Fidelity and its affiliates provide a variety of financial services – such as retirement plan services, insurance services, and retail brokerage services – to Fidelity customers, with whom Fidelity typically enjoys significant, long term relationships.

6.      Fidelity is unique in the retail brokerage field because Fidelity prohibits its Financial Planning Consultants, who focus upon retail brokerage services, from making "cold calls" to persons who have no relationship with Fidelity, or who were not referred to Fidelity.

7.      Fidelity requires its Financial Planning Consultants to develop service relationships based upon leads that Fidelity provides.

8.      Fidelity provides leads to its Financial Planning Consultants from two primary sources.

9.      First, Fidelity forwards information to its representatives from prospective customers who initiate contact with Fidelity either by telephone, over the internet, or in person.

10.      Fidelity and its affiliates devote tens of millions of dollars per year toward attracting customers to Fidelity's various businesses by a variety of means.

11.      Fidelity arranges to publish and broadcast national and local advertisements which invite potential customers to contact Fidelity; Fidelity maintains

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

**COMPLAINT**

1  an interactive internet page that allows interested persons to establish relationships

2  with Fidelity; Fidelity maintains call centers that prospective customers can use to

3  initiate contact with Fidelity; and, Fidelity maintains prominent retail locations which

4  prospective customers can visit.

5        12.    A significant portion of Fidelity's business is derived from this initial

6  customer contact that is generated by significant investments of time, labor, and

7  capital by Fidelity.

8        13.    Fidelity forwards information to its retail representatives regarding

9  customers, with whom Fidelity already has a relationship, when those customers

10  experience "triggering events," such as when a Fidelity 401(k) retirement account

11  matures, which may lead to interest in Fidelity's various retail financial services.

12        14.    A significant portion of Fidelity's business is derived from servicing the

13  needs of Fidelity's existing customers.

14        15.    A Fidelity Financial Planning Consultant who services a Fidelity

15  customer maintains responsibility for that customer only as long as the Financial

16  Planning Consultant engages in an "Investment Consultation" with that customer at

17  least once every 365 days.  If a Fidelity customer has not had an Investment

18  Consultation with the Fidelity Financial Planning Consultant within 365 days, then

19  other Fidelity Financial Planning Consultants have the opportunity to service that

20  customer's account.

21        16.    Fidelity's lead-based approach to supporting its Financial Planning

22  Consultants distinguishes Fidelity from other full-service brokerages, like Merrill

23  Lynch, where individual brokers, rather than the firm, may establish customer

24  relationships.

25        17.    Fidelity's success in its lead-based approach is based on the typically

26  long-standing relationships it enjoys with its customers.

27  ///

28  ///

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

**Fidelity's Trade Secret Customer Data.**

18.     Fidelity's success with its unique lead-based approach to supporting Fidelity Financial Planning Consultants is directly tied to Fidelity's trade secret customer information, which is among Fidelity's most important assets.

19.     Fidelity's trade secret customer data includes the names of and contact information for Fidelity customers, and includes financial information relating to those customers, such as customer financial statements, investment goals, investment history, assets, income, and net worth.

20.     Although certain contact information might be publicly available–such as published home telephone numbers–only a limited number of Fidelity employees know who among the general public are Fidelity customers, and therefore have a specific need for investment services.

21.     Fidelity developed its customer data through a significant investment of time, labor, and capital, as described above.

22.     Fidelity derives substantial economic value from preserving its customer data as a trade secret.

23.     Fidelity engages in reasonable measures to preserve its trade secret customer information.

24.     Fidelity does not provide its trade secret customer data to competitors or any outside third-party.

25.     Fidelity maintains its trade secret customer data on password-protected computers, and only employees whose jobs require access to the customer data are given passwords.

26.     Fidelity protects its trade secret customer information by maintaining a prominent company policy on Fidelity's intranet regarding preservation of confidential information.  A true and correct copy of Fidelity's Confidentiality Policy is attached to this Complaint as Exhibit A.  Fidelity periodically reminds its employees of this policy via e-mail.

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

27.     Fidelity protects its trade secret customer information by requiring each employee who will access the data to execute Fidelity's Employee Agreement, in which they promise to use Fidelity's trade secret customer information only in the course of their employment with Fidelity, and in which they promise not to divulge Fidelity's trade secret customer information to third parties.  By signing this Agreement, the employee acknowledges that Fidelity considers its customer data to be confidential and proprietary to Fidelity.

28.     A true and correct copy of Fidelity's most recent Employee Agreement with Sanchez is attached to this Complaint as Exhibit B.  A true and correct copy of the Fidelity Confidentiality Agreement signed by Sanchez at the beginning of his employment with Fidelity in 1992 is attached to this Complaint as Exhibit C.

29.     Fidelity protects its trade secret customer information by preventing the information from reaching competitors.

30.     Access to Fidelity's trade secret customer information would give a Fidelity competitor an unfair competitive advantage over Fidelity, because that competitor could use that trade secret customer information to attempt to develop new business without having made the investment of time, labor, and capital that Fidelity made to compile the information.

**Sanchez's Employment Agreement.**

31.     As a condition of his employment with Fidelity, Sanchez executed several Confidentiality and Employee Agreements, including one at the commencement of his employment.  (Exhibits B and C).

32.     Fidelity fulfilled its obligations under the Employee Agreement by compensating Sanchez at all times during his employment with Fidelity, promoting him, providing him with introductory and continuing on-the-job training as a Financial Planning Consultant; providing him with support services, paid for facilities, computer equipment, market reporting services, and all other business expenses; providing him with leads and sales opportunities; and registering him with the New

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

6
**COMPLAINT**

York Stock Exchange, National Association of Securities Dealers (n/k/a Financial Industry Regulatory Authority), and the American Stock Exchange.

33.    Fidelity also provided Sanchez with sales assistance, research, the benefit of Fidelity advertising, goodwill and name recognition, access and use of experts in asset management, tax, estate planning and insurance, and with promotional marketing and sales support.

34.    While working at Fidelity, Sanchez specifically acquired contact and confidential financial information of at least 682 Fidelity accounts, representing over $213 million in assets under Fidelity management.

35.    In consideration of the foregoing benefits and opportunities that Fidelity provided to Sanchez, Sanchez agreed in his Employee Agreement as follows:

1. *Confidential Information*.  During the course of my employment by the Fidelity Companies, I may become aware of Confidential Information.  Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to me. It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; *customer, prospect, vendor, and personnel lists; financial and other personal information regarding customers and employees*; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal."  All Confidential Information is imparted to me in a relationship of confidence. During my employment and thereafter, I will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for me to carry out my job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. *I also will not retain any copies, notes, or excerpts of Confidential Information upon termination of my employment*. I will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. I will not open, read, or in any way access Confidential Information without authorization.

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

7

**COMPLAINT**

3. *Company Property*. **Upon termination of my assignment or at any earlier time as requested by the Fidelity Companies, I will return all company property, including but not limited to** my identification badge, company credit cards, company-owned equipment, (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to **Confidential Information**.

6. *Non-solicitation*. **During my employment and for a period of one year following my separation from employment by the Fidelity Companies, I will not directly or indirectly, on my own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies**. …

12. *Miscellaneous*. … I will disclose the existence and terms of this Agreement to any future employer of mine.  My obligations under this Agreement shall survive my employment with the Fidelity Companies.  As to the provisions pertaining to Confidential Information, my obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on my part.

(Exh. B at ¶¶ 1, 3, 6, 12) (emphasis added).

     36.    In addition, Sanchez expressly consented in his Employee Agreement to the issuance of injunctive relief if Sanchez breached the Employee Agreement:

Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them.  Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available.

(Exh. B at ¶ 12.)

**Sanchez Misappropriated Fidelity's Trade Secret Customer Data By Soliciting Fidelity Customers.**

     37.    On May 30, 2008, Sanchez gave two weeks notice of his resignation from Fidelity.  A copy of his resignation letter is attached hereto as Exhibit D.  While Sanchez was not required to report to work during his two week notice period, it was agreed that Fidelity would pay Sanchez his regular wages during the two week notice period.

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

38.     On the same day Sanchez gave notice of his resignation, Branch Office Manager Bradley Norton sent Sanchez a notice reminding him of his obligations under the Employee Agreement to return Fidelity confidential information, not to solicit Fidelity customers for one year, and to disclose the existence and terms of the Employee Agreement to any future employer.  The notice included a copy of Sanchez's Employee Agreement.  A true and correct copy of the May 30, 2008 notice is attached hereto as Exhibit E.

39.     After Sanchez gave two weeks notice of his resignation from Fidelity, Branch Office Manager Bradley Norton received a request from a Christine Kreps at Merrill Lynch's Brea, California, office for reference information regarding Sanchez. In a June 5, 2008, letter responding to this request, Mr. Norton enclosed a copy of Sanchez's Employee Agreement and informed Ms. Kreps of Sanchez's continuing obligations to Fidelity.  Mr. Norton's letter also enclosed a Reference Authorization and Release form that Fidelity policy requires Sanchez to sign before reference information about him can be given to third parties.  A true and correct copy of the June 5, 2008 letter to Christine Kreps is attached hereto as Exhibit F.  Sanchez now works for Fidelity's competitor, Merrill Lynch.

40.     Fidelity has learned that even after receiving the notice from Branch Office Manager Bradley Norton, Sanchez has misappropriated Fidelity's trade secrets to improperly solicit Fidelity customers, while still receiving a paycheck from Fidelity as late as June 10, 2008.

41.     Sanchez is using Fidelity's trade secret customer information to solicit Fidelity customers in an effort to convince them to transfer management of their accounts from Fidelity to Sanchez at Merrill Lynch.

42.     Sanchez has been calling Fidelity customers whose accounts he serviced or whose private information he accessed while employed by Fidelity and soliciting them to transfer their accounts to him at Merrill Lynch.  The only way that Sanchez would have access to the customers' contact information would be by using

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

9

**COMPLAINT**

1  information he misappropriated from Fidelity.

2      43.    Sanchez has also mailed his Merrill Lynch business card to Fidelity

3  customers.  A true and correct copy of the business card mailed by Sanchez to

4  multiple Fidelity customers is attached hereto as Exhibit G.

5      44.    As of the date of this Complaint, nine Fidelity customers whose accounts

6  were serviced by Sanchez or whose information Sanchez learned while he was

7  employed by Fidelity have reported to Fidelity that Sanchez has solicited them either

8  by phone, by mail, or by both, to transfer their business to him at Merrill Lynch.

9  Customers who have reported that Sanchez has solicited them by phone include D

10  S███, J█ W███, A█ A██████, C█ W███, Y███ S███, K█

11  H███, W██ and J█ M███, and L█ R████, and R█ S███.[1]

12      45.    Several of the Fidelity customers that Sanchez is soliciting, via phone

13  calls and mailings, have expressed concern to Fidelity that Sanchez still has their

14  confidential information, including contact information, even though he is no longer

15  with Fidelity.

16      46.    In particular, J█ W███ informed Fidelity he was concerned that his

17  personal information would be in the hands of a former employee.  He told Fidelity he

18  believed Sanchez's actions to be unethical.

19      47.    Fidelity customer A█ A██████ also expressed concern about what

20  information Sanchez may have about him and his Fidelity account.  Sanchez called

21  Mr. A█████ at work to ask if he would be interested in "other options" than

22  Fidelity, and said that he would be more than willing to speak to Mr. A████ about

23  his investment portfolio.  Mr. A████ understood from this conversation that

24  Sanchez was trying to get him to move his accounts to Merrill Lynch.

25      48.    Additionally, J█ M███ expressed concern that Sanchez had her

26  contact information.

27

28  _____

[1] References to customer names have been redacted to protect customers' confidential
information.  Fidelity will provide the court with unredacted copies upon request.

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

49.   Sanchez prepared to engage in, is engaging in, and plans to continue to engage in the following acts:

(a)   removing and/or disclosing Fidelity trade secret customer information and misappropriating the trade secret information contained in confidential Fidelity business records, including specifically the names, addresses, phone numbers, and/or other confidential financial information of Fidelity customers;

(b)   transmitting verbally, in writing or in any other manner for the use of Sanchez's new employer, Merrill Lynch, customers' contact and financial information contained in Fidelity's records;

(c)   soliciting and/or preparing to solicit Fidelity's customers to terminate their relationship with Fidelity and transfer management of their accounts from Fidelity to Sanchez at Merrill Lynch; and/or

(d)   other such acts which violate California law regarding Trade Secrets, and which are contrary to the terms, conditions, and provisions of the Employee Agreement.

50.   Fidelity is damaged by the actual and threatened loss of customer goodwill. Fidelity customers have an expectation that their confidential contact and financial information will be protected. Customers are understandably concerned when former Fidelity employees who should not have access to customer information are using that information to solicit the customer's business.

51.   In addition to the loss of customers' trust and good will, Fidelity faces direct financial loss as a result of Sanchez's conduct should any of the improperly solicited customers decide to move their accounts to Merrill Lynch or elsewhere. This loss is difficult to calculate as it cannot be known what future investment opportunities are lost with each departing customer. However, Fidelity has already suffered some injury as at least one customer who was serviced by Sanchez at Fidelity has transferred his account to Merrill Lynch.

///
///
///
///
///

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

### FIRST CAUSE OF ACTION

### (Misappropriation of Trade Secrets Under CAL. CIV. CODE §§ 3426 et seq.)

52.    The allegations of Paragraphs 1 through 50 are incorporated herein by reference with the same force and effect as if set forth in full below.

53.    The above-alleged facts constitute actual and threatened misappropriation of trade secrets by Sanchez pursuant to the California Uniform Trade Secrets Act ("CUTSA"), CAL. CIV. CODE § 3426, et seq., in one or more of the following respects.

54.    Fidelity's above-described trade secrets, including the contact and confidential financial information of Fidelity customers, are subject to reasonable efforts by Fidelity to maintain their secrecy and/or confidentiality.  Fidelity's customer information is not generally known.

55.    Fidelity derives a significant economic benefit from maintaining the secrecy and confidentiality of the above-described trade secrets.

56.    Fidelity faces an immediate threat of continuing irreparable harm, for which Fidelity lacks an adequate remedy at law, from Sanchez's ongoing misappropriation and misuse of Fidelity's trade secret customer information.

57.    Unless Sanchez is preliminarily and permanently enjoined from the foregoing conduct, Fidelity will be irreparably harmed by:

(a)    Disclosure of trade secrets, customer lists, and other confidential information that is solely the property of Fidelity and its customers;

(b)    Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

58.    Sanchez's conduct constitutes a willful and malicious misappropriation of Fidelity's trade secrets.

WHEREFORE, Fidelity prays that this Court:  (i) award Fidelity enhanced damages arising out of Sanchez's wrongful conduct, including damages pursuant to CAL. CIV. CODE § 3426.3, (ii) award Fidelity the cost of its reasonable attorneys'

1  fees pursuant to CAL. CIV. CODE § 3426.4, (iii) order Sanchez to return to Fidelity

2  (through counsel) all customer information taken by Sanchez from Fidelity, including

3  all electronic copies and hard copies, and (iv) enter emergency injunctive relief and

4  judgment in favor of Fidelity and against defendant Sanchez to enjoin defendant

5  Sanchez from, directly or indirectly, and whether acting alone or in concert with

6  others, until hearing and thereafter until further Order of this Court, the following:

    (a)    soliciting, whether directly or indirectly, and whether alone or in concert with others, any business from any Fidelity customer whom Sanchez served or whose name became known to Sanchez while in the employ of Fidelity, including, without limitation, all customers Sanchez learned of through his employment with Fidelity;

    (b)    using, disclosing, transmitting and continuing to possess for any purpose, including solicitation of customers, the information contained in the records of Fidelity, including, but not limited to, the names, addresses, and confidential financial information of the customers Sanchez learned of through his employment with Fidelity;

    (c)    Sanchez, and anyone acting in concert with him, including any agent, employee, officer or representative of Sanchez's new employer, is further ordered to return to Fidelity any and all records, documents and/or information pertaining to Fidelity customers, whether in electronic, handwritten or any other form within five (5) days of entry of this order, including any and all copies;

    (d)    any and all other such acts as this Court deems appropriate for injunctive relief.

## SECOND CAUSE OF ACTION

### (Breach of Contract – Confidentiality, Non-Solicitation and Non-Disclosure)

59.    The allegations of Paragraphs 1 through 58 are incorporated herein by reference with the same force and effect as if set forth in full below.

60.    Sanchez agreed not to solicit, directly or indirectly, in any manner or induce or attempt to induce any Fidelity customer for a period of one year after his separation from employment with Fidelity.

61.    Sanchez agreed not to copy, disclose, or discuss in any manner any Confidential Information as defined in the Employee Agreement unless it was necessary for him to carry out his duties on behalf of Fidelity, and not to retain any copies of Fidelity Confidential Information when he left Fidelity.

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

62.     Sanchez breached the non-solicitation, confidentiality, and non-disclosure provisions of his Employee Agreement by the conduct described above.

63.     Sanchez continues to violate his contractual obligations, and will continue to violate those obligations in the future.

64.     As a consequence of the foregoing, Fidelity has suffered and will continue to suffer irreparable harm for which it lacks an adequate remedy at law and financial loss.

65.     Unless Sanchez is enjoined from the foregoing conduct, Fidelity will be irreparably harmed by:

(a)     Disclosure of trade secrets, customer lists, and other confidential information that is solely the property of Fidelity and its clients;

(b)     Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

WHEREFORE, Fidelity prays that this Court award Fidelity damages arising out of Sanchez's wrongful conduct and enter emergency injunctive relief and judgment in favor of Fidelity and against defendant Sanchez to enjoin him, directly or indirectly, and whether acting alone or in concert with others, until hearing and thereafter until further Order of this Court, from:

(a)     soliciting, whether directly or indirectly, and whether alone or in concert with others, any business from any Fidelity customer whom Sanchez served or whose name became known to Sanchez while in the employ of Fidelity, including, without limitation, all customers Sanchez learned of through his employment with Fidelity;

(b)     using, disclosing, transmitting and continuing to possess for any purpose, including solicitation of customers, the information contained in the records of Fidelity, including, but not limited to, the names, addresses, and confidential financial information of the customers Sanchez learned of through his employment with Fidelity;

(c)     Sanchez, and anyone acting in concert with him, including any agent, employee, officer or representative of Sanchez's new employer, is further ordered to return to Fidelity any and all records, documents and/or information pertaining to Fidelity customers, whether in electronic, handwritten or any other form within five (5) days of entry of this order, including any and all copies;

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

14
**COMPLAINT**

1     (d)    any and all other such acts as this Court deems appropriate for injunctive
relief.

## THIRD CAUSE OF ACTION

### (Unfair Competition Under CAL. BUS. & PROF. CODE §§ 17200 *et seq.*)

66.    The allegations of Paragraphs 1 through 65 are incorporated herein by reference with the same force and effect as if set forth in full below.

67.    Sanchez's actions alleged herein constitute unlawful or unfair business acts and/or practices and thereby constitute unfair competition under California Business & Professions Code section 17200 *et. seq.*

68.    Upon information and belief, the practices alleged above are continuing.

69.    Sanchez's actions in misappropriating Fidelity's trade secret customer information constitutes a breach of his Employee Agreement, is a violation of CUTSA, and violates common law trade secret protections.

70.    Sanchez's actions also violate multiple sections of 17 C.F.R. § 248.1, et. seq., commonly referred to as "Regulation S-P."  Regulation S-P governs privacy of consumer financial information.  Regulation S-P Rule 10 prohibits the disclosure of nonpublic personal information to third parties without the consumers consent.  17 C.F.R. § 248.10.  "Nonpublic personal information" is defined as:  (i) personally identifiable financial information and (ii) any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived using any personally identifiable financial information that is not publicly available information.  17 C.F.R. § 248.3(t)(1).

71.    Fidelity is obligated under Regulation S-P to protect its customers' personal information from unauthorized disclosure.

72.    Sanchez's actions in taking Fidelity customer information with him when he left Fidelity's employment, and disclosing that information to his new employer without the customers' permission in order to solicit Fidelity's customers on behalf of Merrill Lynch, violate Regulation S-P.

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

73.     Fidelity has suffered injury in fact and has lost money and/or property as a result of Sanchez's unfair competition because at least one customer has transferred his account from Fidelity to Sanchez at Merrill Lynch.

74.     Fidelity requests an order requiring Sanchez to disgorge his ill-gotten gains and/or awarding Fidelity restitution of all monies wrongfully acquired by Sanchez by means of such acts and/or practices of unfair competition.

75.     Fidelity requests an order restoring any and all monies to Fidelity which were acquired or obtained by Sanchez by means of such unfair competition.

76.     Fidelity requests an order imposing a trust upon defendants' ill-gotten gains and/or monies which were acquired and/or obtained by means of unfair competition to avoid dissipation, fraudulent transfers or concealment of such monies by Sanchez.

77.     Fidelity has suffered irreparable harm as a result of Sanchez's activities and will continue to suffer irreparable injury that cannot adequately be remedied at law unless Sanchez is enjoined from engaging in any further such acts of unfair competition.

WHEREFORE, Fidelity prays that this Court:  (i) award Fidelity the cost of its reasonable attorneys' fees pursuant to CAL. BUS. & PROF. CODE § 17203, (ii) order Sanchez to return to Fidelity (through counsel) all customer information taken by Sanchez from Fidelity, including all electronic copies and hard copies, (iii) order Sanchez to disgorge his ill-gotten gains and/or award Fidelity restitution of all monies wrongfully acquired by Sanchez by means of such acts and/or practices of unfair competition; and (iii) enter emergency injunctive relief and judgment in favor of Fidelity and against defendant Sanchez to enjoin defendant Sanchez from, directly or indirectly, and whether acting alone or in concert with others, until hearing and thereafter until further Order of this Court, the following:

(a)     soliciting, whether directly or indirectly, and whether alone or in concert with others, any business from any Fidelity customer whom Sanchez served or whose name became known to Sanchez while in the

employ of Fidelity, including, without limitation, all customers Sanchez learned of through his employment with Fidelity;

(b)     using, disclosing, transmitting and continuing to possess for any purpose, including solicitation of customers, the information contained in the records of Fidelity, including, but not limited to, the names, addresses, and confidential financial information of the customers Sanchez learned of through his employment with Fidelity;

(c)     Sanchez, and anyone acting in concert with him, including any agent, employee, officer or representative of Sanchez's new employer, is further ordered to return to Fidelity any and all records, documents and/or information pertaining to Fidelity customers, whether in electronic, handwritten or any other form within five (5) days of entry of this order, including any and all copies;

(d)     any and all other such acts as this Court deems appropriate for injunctive relief.

Dated:  June 12, 2008                    Respectfully submitted,

                                         LOCKE LORD BISSELL & LIDDELL LLP

                                         By:_____
                                             Jackie Redin Klein
                                             Nina Huerta
                                         Attorneys for Plaintiff
                                         FIDELITY BROKERAGE SERVICES LLC

CHI1 1497603v.4

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

**EXHIBIT A**

Confidential Information

# HRSolutions

| Benefits & Money | Career & Training | Forms | Policies | Jobs | Contact Info | Working At Fidelity |

Home >

Monday, April 9, 2007

☎ Need More Info?
Call HR Solutions at
800-835-5099
(Prompt 2, Option 3)

## Policy: Confidential Information

Information is an asset of tremendous value in the financial services industry. To maintain the integrity and confidentiality of Fidelity information, employees are required to protect confidential information at all times and to refrain from inappropriately using confidential information or disclosing it to unauthorized persons.

Fidelity employees often have access to a wide range of confidential information. Confidential information consists of all information made known to the employee that is not generally known to the public and has not been expressly authorized for public disclosure and that is or may be used in the business of any of the Fidelity companies. It includes but is not limited to:

- trade secrets;
- secret, confidential, private or proprietary information;
- computer passwords and program designs;
- proprietary computer software designs and hardware configurations;
- proprietary technology;
- new product and service ideas;
- business plans;
- marketing, financial, trading, research, pricing and sales data;
- customer, prospect, vendor or personnel lists;
- financial and other personal or private information regarding customers;
- financial and other personal or private information regarding other employees, if such information has been obtained either through accessing Fidelity's confidential personnel records or through the exercise of one's confidential job responsibilities;
- confidential information about other companies and their products;
- information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential" or "Fidelity Internal."

All information is imparted to employees in a relationship of confidence. This means that all employees must exercise a particularly high standard of care with regard to all confidential information. Specifically, each employee is responsible to:

- keep confidential information from possession or review by any unauthorized person;
- not copy, reproduce, use, disclose or discuss in any manner, in whole or in part,

**Exhibit __A__, Pg. _18_**

## Confidential Information

any confidential information unless it is:

1. necessary to carry out the employee's job and the employee has permission from the owner;
2. necessary for other employees or agents of Fidelity to carry out their duties and responsibilities; or
3. authorized in writing by Fidelity;

- not retain any copies, notes or excerpts (in any form) of confidential information upon termination of employment;
- notify Fidelity of any inadvertent, unauthorized or negligent copying, reproduction, use, disclosure or discussion of any confidential information;
- not open, read or in any way access confidential information without authorization, and make sure they know to whom they are speaking before giving out any information.

All Fidelity information requires special labeling, storage, handling, and destruction in accordance with the policies maintained by Corporate Information Security. Please refer to the Corporate Information Security Group website for more information.

Managers are responsible for understanding, communicating and enforcing Company policies. This does not, however, override or diminish an employee's individual responsibility to be aware of and adhere to this policy. HR Solutions is available to provide guidance upon request.

Revised: 6-08-06

*Disclaimer: This policy does not create a contract of employment. The Company reserves the right to amend, modify, change, suspend or cancel all or any part of the policies, practices, services, benefits or other portions of this policy at any time, or from time to time, with or without notice. Here is the full text of the disclaimer.*

Site feedback or comments? Email us | Site Map

Fidelity Central

© Copyright 1998-2007 FMR Corp.
All rights reserved.
Fidelity Internal Information.
Legal Information.

**Exhibit  A , Pg. 19**

**EXHIBIT B**

**EMPLOYEE AGREEMENT**

I, _Douglas J. Sanchez_, wish to be employed by FMR Corp. and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR Corp. (the "Fidelity Companies"). As a condition of employment, I must understand and agree to abide by this Agreement. This Agreement describes certain aspects of my employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory and other obligations.

1. *Confidential Information.* During the course of my employment by the Fidelity Companies, I may become aware of Confidential Information. Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to me. It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customer, prospect, vendor, and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to me in a relationship of confidence. During my employment and thereafter, I will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for me to carry out my job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. I also will not retain any copies, notes, or excerpts of Confidential Information upon termination of my employment. I will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. I will not open, read, or in any way access Confidential Information without authorization.

2. *Systems Access.* In order to carry out my responsibilities, I may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). I will not disclose my password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. I will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. My authorization to access Fidelity systems shall expire when I leave Fidelity's employ.

3. *Company Property.* Upon termination of my assignment or at any earlier time as requested by the Fidelity Companies, I will return all company property, including but not limited to my identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4. *Outside Business Activities.* So long as I am employed by the Fidelity Companies, I will not engage in any other employment or business activities unless I receive prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

5. *Ethics and Outside Brokerage Accounts.* So long as I am employed by the Fidelity Companies, I will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures or guidelines regarding Fidelity's standards for the proper conduct of business. If I am an employee of or associated with a registered broker/dealer or registered with the New York Stock Exchange or the National Association of Securities Dealers, I will comply with industry agreements, standards, and regulations, and all special policies, compliance standards and guidelines of the Fidelity Companies applicable to those in regulated businesses. Neither I nor my spouse will maintain any brokerage account that either of us owns or in which either of us has a beneficial interest through any non-Fidelity broker-dealer unless I receive prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for an outside account may be withdrawn at any time.

6. *Non-solicitation.* During my employment and for a period of one year following my separation from employment by the Fidelity Companies, I will not directly or indirectly, on my own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. For this same period, I also will not directly or indirectly, on my own behalf or on behalf of anyone else or any company, sell any security, insurance or annuity product or any other product or service to any customer or prospective customer with whom I had personal contact during the course of my employment by the Fidelity Companies. During this same period, I also will not

Employee's Initials: _____

directly or indirectly, on my own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7. *Inventions*. I will disclose and I hereby assign to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that I make or conceive, whether or not patentable or copyrightable, either solely or jointly with others, during the period of my employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during my employment shall be considered works made for hire and all right, title, and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, I hereby assign the sole right, title, and interest in the Materials to the Fidelity Companies. In addition, I will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during my employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which I do for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work.

8. *Background Investigations*. The Fidelity Companies perform background security investigations of all new employees, including but not limited to education, employment, credit, and criminal record checks. This process may include fingerprinting. The fingerprints will be used to check the criminal records of the Federal Bureau of Investigation. All information I provide as part of the application or background investigation process will be as accurate and complete as possible. My failure to provide accurate and complete information may result in my offer of employment being withdrawn or my dismissal from employment. Employment and continued employment are contingent upon positive references and background investigations, as judged by Fidelity. Investigations may take several months to perform, may not be completed until after an offer is made or employment has commenced, and may be reopened if new information is learned during my employment.

9. *Agreements with Others*. I represent and warrant that my employment by the Fidelity Companies will not require me to violate any agreement I may have with any employer or other business, and that I will not engage in any activities in violation of any such agreement. Without limiting the foregoing, I will not use or disclose to the Fidelity Companies any confidential information belonging to others. I further represent and warrant that I am not a party to any agreement, and I owe no duty to anyone, that limits or affects my ability to perform my duties for the Fidelity Companies. I have attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which I am or have been a party.

10. *At Will Employment*. My employment by the Fidelity Companies is at will and may be terminated by me or by them at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

11. *Use of Name or Likeness*. I hereby authorize the Fidelity Companies to use, publish, and copyright all or part of my name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by me.

12. *Miscellaneous*. This agreement will continue in full force and effect throughout my tenure with any of the Fidelity Companies, regardless of the position I hold or the particular Fidelity Company that employs me. Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which I work. I will disclose the existence and terms of this Agreement to any future employer of mine. My obligations under this Agreement shall survive my employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, my obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on my part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement is governed in accordance with Massachusetts law and is signed under seal.

**This agreement contains important information regarding the terms of my employment with the Fidelity Companies. I have read this entire agreement carefully and I understand it and agree to adhere to it.**

| | |
|---|---|
| _Douglas J. Romchery_ | _5/7/03_ |
| Name | Date |

Revised November, 2000

**EXHIBIT C**



## CONFIDENTIALITY AGREEMENT

I understand that Fidelity Investments and its related companies ("Fidelity") develop, market, and sell financial services and conduct related businesses. I wish to be employed by Fidelity. So long as I am employed by Fidelity, I agree to work for Fidelity under the terms of this Agreement. I understand my employment by Fidelity is at will and may be terminated at any time with or without cause.

My employment with Fidelity will not violate any agreement or duty I may have to any former employer. I will not use or disclose to Fidelity any confidential information belonging to others. I may become aware of information related to Fidelity's business that is considered confidential by Fidelity. This information is of great value and importance to Fidelity's business and may include:
- Computer passwords and program designs
- New product ideas
- Customer, vendor and personnel lists and information

This list is not exhaustive. Other information concerning Fidelity's products or competitive business position is also considered confidential until it is publicly disclosed by Fidelity or comes into the public domain in some other lawful manner.

Upon termination of employment, I will return to Fidelity all documents and materials received from or created for Fidelity, including but not limited to documents and materials containing or related to confidential information.

I will not engage in any other business which may be similar to or compete with Fidelity without prior written approval of an officer of Fidelity. Listed below are any other similar or competing business activities in which I am engaged:

Name of Business: _____
Type of Business: _____
Position: _____

Date: __7/13/92__          Signature _Douglas J. Sanchez_

Social Security # __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__     Print Name __Douglas J. Sanchez__

Date: __7/13/92__          By _____

Exhibit _C_, Pg. _22_

**EXHIBIT  D**

May 30, 2008


Dear Bradley Norton,


I resign from Fidelity Investments effective immediately.
I am providing you two weeks notice as of today.


Sincerely,

Douglas J. Sanchez
A 054002

**EXHIBIT E**



MEMO

BY OVERNIGHT DELIVERY

May 30, 2008

Doug Sanchez
60 Palatine #104
Irvine, CA 92612

**Re: Your Ongoing Obligations to Fidelity**

Dear Doug:

As you leave Fidelity, please bear in mind that you have ongoing obligations to the Fidelity companies. These obligations are briefly summarized here and are described more thoroughly in your employee agreement.

First, the agreement prohibits you from using or disclosing any of the Fidelity companies' confidential information. Confidential information includes things like customer lists; customer names, Social Security numbers, financial or contact information; employee data; and other Fidelity proprietary and business information. What this restriction means is that you cannot take any confidential information with you, regardless of whether it is in a printed, on-line or other format. It also means that you cannot use Fidelity's confidential information  whether it is in a printed or on-line format, or even in your memory - for your own benefit or the benefit of another employer. If you have any Fidelity information in your possession – or if you have given it to anyone else who is not authorized by Fidelity to have it – you need to return it to me immediately. Note that your obligations regarding confidential information are not limited to a one-year period. Rather, your obligations regarding confidential information continue until that information becomes known to the general public through no action on your part.

Second, the agreement prohibits you from soliciting any of the Fidelity companies' customers for one year after your separation date. Prohibited solicitation includes direct and indirect efforts to encourage any Fidelity customer to leave Fidelity or to move some or all of his or her assets to another firm. Examples of direct solicitation would include telephone calls or meetings with any Fidelity customers, mailings to any Fidelity customers, or other correspondence with Fidelity customers. Indirect solicitation would include your assisting another person or firm to solicit any Fidelity customers.

Third, the employee agreement prohibits you from soliciting any of Fidelity's employees to leave Fidelity for one year after your separation date.

Fourth, you are required to disclose the existence and all the terms of your employee agreement to your new employer.

The full scope of these obligations is set forth in the employee agreement itself, which is attached for your reference. Should you have any questions, please let me know.

Very truly yours,

Brad Norton
Branch Manager
Brea Investor Center

**EXHIBIT F**

                                               MEMO


BY OVERNIGHT DELIVERY

June 5, 2008

Christine Kreps
145 South State College Blvd.
Brea, CA 92821

Re: Doug Sanchez

Dear Christine:

I am enclosing a copy of Doug Sanchez's employee agreement. The agreement
requires Doug to refrain from using or disclosing Fidelity's confidential information
and also requires him to refrain from soliciting or selling products or services to
Fidelity Investments customers for a period of one year following his departure from
the firm.

As you have requested reference information about Doug, I am enclosing a Reference
Authorization and Release form for him/her to sign and return to me. Fidelity policy
requires that this form be signed and returned before I can provide any reference
information to you.

Please let me know if you have any questions about this matter. We trust that Doug
intends to comply with his ongoing obligations to Fidelity and wish him well in his
future endeavors.

                                        Very truly yours,

                                        Brad Norton
                                        Branch Manager
                                        Brea Investor Center


                        Exhibit __F__, Pg. __25__

## EMPLOYEE AGREEMENT

I, Douglas J. Sanchez, wish to be employed by FMR Corp. and/or any entity that is directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR Corp. (the "Fidelity Companies"). As a condition of employment, I must understand and agree to abide by this Agreement. This Agreement describes certain aspects of my employment, protects Confidential Information and goodwill of the Fidelity Companies, and assists the Fidelity Companies in complying with their legal, regulatory and other obligations.

1. *Confidential Information.* During the course of my employment by the Fidelity Companies, I may become aware of Confidential Information. Confidential Information consists of all information pertaining to the business of any of the Fidelity Companies that is not generally known to the public at the time made known to me. It includes but is not limited to trade secrets; secret, confidential, and proprietary information; information protected by the attorney-client privilege; marketing, financial, research, trading, portfolio, and sales information; computer passwords and program designs; proprietary computer software designs and hardware configurations; proprietary technology; new product and service ideas; business, pricing, and marketing plans; customer, prospect, vendor, and personnel lists; financial and other personal information regarding customers and employees; confidential information about other companies and their products; and information expressly designated as "Fidelity Highly Confidential," "Fidelity Confidential," or "Fidelity Internal." All Confidential Information is imparted to me in a relationship of confidence. During my employment and thereafter, I will not copy, reproduce, use, disclose, or discuss in any manner, in whole or in part, any Confidential Information unless (1) necessary for me to carry out my job; (2) necessary for employees or other agents of the Fidelity Companies to carry out their duties and responsibilities; or (3) authorized in writing by the Fidelity Companies. I also will not retain any copies, notes, or excerpts of Confidential Information upon termination of my employment. I will promptly notify the Fidelity Companies of any inadvertent, unauthorized, or negligent copying, reproduction, use, disclosure, or discussion of Confidential Information. I will not open, read, or in any way access Confidential Information without authorization.

2. *Systems Access.* In order to carry out my responsibilities, I may be given access to various computer systems and passwords, user identifications, or other authenticating information ("password(s)"). I will not disclose my password(s) to anyone except in accordance with Fidelity policy. While incidental personal use of systems may occur, this is not the purpose of providing access; rather, all systems generally are to be used for legitimate Fidelity business purposes only, and all items created, accessed, or stored will be treated as Fidelity property for all purposes, including but not limited to monitoring, access, recording, review, and disclosure by Fidelity. I will adhere to all software licensing or other agreements applicable to systems and to Fidelity's expectations and policies regarding systems usage. My authorization to access Fidelity systems shall expire when I leave Fidelity's employ.

3. *Company Property.* Upon termination of my assignment or at any earlier time as requested by the Fidelity Companies, I will return all company property, including but not limited to my identification badge, company credit cards, company-owned equipment (such as cellular telephones, beepers, and laptop computers), and all documents and materials received from or created for or by any of the Fidelity Companies, including but not limited to Confidential Information.

4. *Outside Business Activities.* So long as I am employed by the Fidelity Companies, I will not engage in any other employment or business activities unless I receive prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for outside activities may be withdrawn at any time.

5. *Ethics and Outside Brokerage Accounts.* So long as I am employed by the Fidelity Companies, I will adhere to the Code of Ethics for Personal Investing and the Statement of Policies and Procedures on Insider Trading and all other policies, procedures or guidelines regarding Fidelity's standards for the proper conduct of business. If I am an employee of or associated with a registered broker/dealer or registered with the New York Stock Exchange or the National Association of Securities Dealers, I will comply with industry agreements, standards, and regulations, and all special policies, compliance standards and guidelines of the Fidelity Companies applicable to those in regulated businesses. Neither I nor my spouse will maintain any brokerage account that either of us owns or in which either of us has a beneficial interest through any non-Fidelity broker-dealer unless I receive prior written approval from the Fidelity Companies in accordance with applicable policies and procedures. Approval for an outside account may be withdrawn at any time.

6. *Non-solicitation.* During my employment and for a period of one year following my separation from employment by the Fidelity Companies, I will not directly or indirectly, on my own behalf or on behalf of anyone else or any company, solicit in any manner or induce or attempt to induce any customer of the Fidelity Companies to divert or take away all or any portion of his/her/its business from the Fidelity Companies or otherwise cease the relationship with the Fidelity Companies. For this same period, I also will not directly or indirectly, on my own behalf or on behalf of anyone else or any company, sell any security, insurance or annuity product or any other product or service to any customer or prospective customer with whom I had personal contact during the course of my employment by the Fidelity Companies. During this same period, I also will not

Employee's Initials: DJS

Exhibit F, Pg. 26

directly or indirectly, on my own behalf or on behalf of anyone or any company, hire, solicit in any manner, or induce or attempt to induce any employee of any of the Fidelity Companies to leave his/her employment.

7. _Inventions._ I will disclose and I hereby assign to Fidelity as Fidelity's exclusive property all ideas, writings, inventions, products, methods, techniques, discoveries, improvements, and technical or business innovations (the "Inventions") that I make or conceive, whether or not patentable or copyrightable, either solely or jointly with others, during the period of my employment. All written or computer coded materials manifested in documents, systems design, disks, tapes, drawings, reports, specifications, data, memoranda, or otherwise (the "Materials") made or conceived during my employment shall be considered works made for hire and all right, title, and interest in the Materials shall be owned by the Fidelity Companies. To the extent that the Materials may be held not to be works made for hire, I hereby assign the sole right, title, and interest in the Materials to the Fidelity Companies. In addition, I will execute all necessary paperwork and provide all other reasonable assistance requested by any of the Fidelity Companies, either during my employment or thereafter, to enable the Fidelity Companies to obtain, maintain, or enforce in itself or its nominees, patents, copyrights, trademarks, or other legal protection on the Inventions in any and all countries. These provisions with respect to Inventions and Materials apply only to Inventions and Materials which (i) are along the lines of the business or work of any of the Fidelity Companies; (ii) result from or are suggested by any work which I do for the Fidelity Companies; (iii) are made or conceived using equipment or other materials of the Fidelity Companies; or (iv) are made or conceived during regular hours of work.

8. _Background Investigations._ The Fidelity Companies perform background security investigations of all new employees, including but not limited to education, employment, credit, and criminal record checks. This process may include fingerprinting. The fingerprints will be used to check the criminal records of the Federal Bureau of Investigation. All information I provide as part of the application or background investigation process will be as accurate and complete as possible. My failure to provide accurate and complete information may result in my offer of employment being withdrawn or my dismissal from employment. Employment and continued employment are contingent upon positive references and background investigations, as judged by Fidelity. Investigations may take several months to perform, may not be completed until after an offer is made or employment has commenced, and may be reopened if new information is learned during my employment.

9. _Agreements with Others._ I represent and warrant that my employment by the Fidelity Companies will not require me to violate any agreement I may have with any employer or other business, and that I will not engage in any activities in violation of any such agreement. Without limiting the foregoing, I will not use or disclose to the Fidelity Companies any confidential information belonging to others. I further represent and warrant that I am not a party to any agreement, and I owe no duty to anyone, that limits or affects my ability to perform my duties for the Fidelity Companies. I have attached to this Agreement a list of all confidentiality, inventions, non-solicitation, non-compete, or other restrictive agreements to which I am or have been a party.

10. _At Will Employment._ My employment by the Fidelity Companies is at will and may be terminated by me or by them at any time and for any reason, with or without cause or notice, during or after any applicable initial evaluation period.

11. _Use of Name or Likeness._ I hereby authorize the Fidelity Companies to use, publish, and copyright all or part of my name, voice, picture, portrait, and likeness as the Fidelity Companies may decide in their sole discretion, in all media and types of advertising for any product or service or for any other lawful purpose, without review by me.

12. _Miscellaneous._ This agreement will continue in full force and effect throughout my tenure with any of the Fidelity Companies, regardless of the position I hold or the particular Fidelity Company that employs me. Any agreement contrary to any of the provisions of this agreement or modifying this agreement in any way must be in writing and must be signed by the President or Human Resources Vice President of the Fidelity Company for which I work. I will disclose the existence and terms of this Agreement to any future employer of mine. My obligations under this Agreement shall survive my employment with the Fidelity Companies. As to the provisions pertaining to Confidential Information, my obligations shall continue until such time as the Confidential Information becomes known to the general public through no action on my part. Any violation of this Agreement will cause irreparable damage to the Fidelity Companies or any of them. Therefore, the Fidelity Companies or any of them shall have the right to seek specific enforcement of this Agreement through equitable and injunctive relief, in addition to any other remedies available. This agreement is governed in accordance with Massachusetts law and is signed under seal.

agreement contains important information regarding the terms of my employment with the Fidelity Companies. I have read this entire agreement carefully and I understand it and agree to adhere to it.

_Douglas J. Noonan_        _5/7/03_
Name                   Date
Revised November, 2000

Exhibit _F_ , Pg. _27_

**FIDELITY INVESTMENTS**

**AUTHORIZATION AND RELEASE FOR
EMPLOYMENT REFERENCE**

I, _____, hereby request FMR LLC and/or any company directly or indirectly, wholly or in part, owned or controlled by or under common control with FMR LLC (the "Fidelity Companies") to provide reference information regarding me and my employment with the Fidelity Companies. Reference information includes, but is not limited to, information regarding my background, employment qualifications, job performance, duties, experience, compensation, reason for leaving, and eligibility for rehire, and may be provided to anyone requesting a reference or other information related to my employment. I understand and agree that information about me and my employment may be provided by the Fidelity Companies either orally or in writing.

In consideration of the Fidelity Companies' undertaking to provide reference information, I hereby release the Fidelity Companies, their successors and assigns, and their partners, joint venturers, shareholders, officers, directors, employees, and agents (the "Releasees") from any and all claims, charges, and liabilities arising from these references. I understand and agree that by signing this Authorization and Release, I am giving up the right to sue any of the Releasees based on any information or opinions they provide or fail to provide in response to a reference request.

A photocopy of this authorization and release may be considered as valid as an original.

_____     _____
Signature                                         Date


_____
Corporate I.D.


Please return to HR Operations, 2 Contra Way, T2X, Merrimack, NH  03054

ver. 11/07

LG971200083_REFERENCE_AUTHORIZATIO

Exhibit F, Pg. 28

**EXHIBIT  G**



Merrill Lynch

is pleased to announce

## Douglas J. Sanchez

has joined the

Global Wealth Management

as

Financial Advisor

Douglas J. Sanchez
Financial Advisor

Global Wealth Management
145 S. State College Blvd.
Suite 300
Brea, CA 92821
T 714 257 4493
T 800 937 0262
F 714 990 8137
doug_sanchez@ml.com

**Merrill Lynch**

'08 JUN  6PM 5:40E

145 S. State College Blvd.
Suite 300
Brea, California 92831

(714) 257-4493
(800) 937-0252 Toll Free
(714) 990-8137 Fax

Exhibit _G_, Pg. _29_

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Audrey B. Collins and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV08- 3863 ABC (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X]** **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[_]** **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[_]** **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Jackie Redin Klein (SBN: 156028)
Nina Huerta (SBN: 229070)
LOCKE LORD BISSELL & LIDDELL LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119
Tel: 213.485.1500; Fax: 213.485.1200

6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

FIDELITY BROKERAGE SERVICES, LLC,

PLAINTIFF(S)

v.

DOUGLAS SANCHEZ,

DEFENDANT(S).

CASE NUMBER

CV08-03863 ABC    PJWx

**SUMMONS**

TO:     DEFENDANT(S): __DOUGLAS SANCHEZ_____

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Jackie Redin Klein/Nina Huerta_____, whose address is _Locke Lord Bissell & Liddell LLP, 300 S. Grand Ave., 8th Fl., Los Angeles, CA  90071_.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  JUN 1 2 2008
_____

By: _____

**LA'REE HORN**

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

1192

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) <br> FIDELITY BROKERAGE SERVICES, LLC | DEFENDANTS <br> DOUGLAS SANCHEZ |
|---|---|
| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): <br> Suffolk County, Massachusetts | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br> Jackie Redin Klein/Nina Huerta <br> **LOCKE LORD BISSELL & LIDDELL LLP** <br> 300 South Grand Avenue, Eighth Floor <br> Los Angeles, California 90071-3119 <br> Tel: (213) 485-1500/Fax: (213) 485-1200 | Attorneys (If Known) <br> Unknown |

### II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. ORIGIN (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

### V. REQUESTED IN COMPLAINT: JURY DEMAND: ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

CLASS ACTION under F.R.C.P. 23: ☐ Yes ☒ No ☐ MONEY DEMANDED IN COMPLAINT: $ _____

### VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332 - Diversity Jurisdiction

### VII. NATURE OF SUIT (Place an X in one box only.)

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Act
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Info. Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Fed. Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury-Med Malpractice
- ☐ 365 Personal Injury-Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**TORTS — PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 American with Disabilities – Employment
- ☐ 446 American with Disabilities – Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus/Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE / PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety /Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI(405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

### VIII(a). IDENTICAL CASES: Has this action been previously filed and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s):

FOR OFFICE USE ONLY: Case Number: _____

CV-71 (07/05)   CIVIL COVER SHEET   Page 1 of 2

CV08-03863

American LegalNet, Inc. <br> www.USCourtForms.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

CIVIL COVER SHEET

### AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.

**Suffolk County, Massachusetts - Fidelity Brokerage Services, LLC**

List the California County, or State if other than California, in which EACH named defendant resides. (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.

**Orange County, California - Douglas Sanchez**

**List the California County,** or State if other than California, in which EACH claim arose. (Use an additional sheet if necessary)
**Note:** In land condemnation cases, use the location of the tract of land involved.

Orange County

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _(signature)_ Date 6/12/08

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.USCourtForms.com